UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR GRESHAM and CONQUEST COMMUNICATIONS GROUP, LLC,<br><br>    Plaintiffs,<br><br>  v.<br><br>MICHAEL PICKER, MIKE FLORIO, CARLA PETERMAN, LIANE RANDOLPH, and CATHERINE SANDOVAL, in their official capacity as Commissioners of the California Public Utilities Commission,<br><br>    Defendants. | No.  2:16-cv-01848-JAM-CKD<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PRELIMINARY INJUNCTION** |

   This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction to prohibit Defendants from enforcing California's automatic dialing-announcing device prohibition against Plaintiffs on the grounds that the statute violates the First Amendment.  For the following reasons, Plaintiffs' motion is denied.

///

///

1

1          I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2          Plaintiff Victor Gresham is a political consultant who

3    engages in political communications through Plaintiff Conquest

4    Communications Group, LLC, a Virginia based company of which he

5    is a principal.  Declaration of Victor Gresham in Support of

6    Plaintiffs' Motion for Preliminary Injunction ("Gresham Decl.")

7    ¶ 2.  Gresham and his company want to conduct politically

8    related, automated telephone calls in California during the 2016

9    election cycle.  Id. ¶ 3.

10         Plaintiffs have refrained from conducting politically

11   related automated telephone calls in California, at least since

12   late Spring 2016, due to California Public Utility Code §§ 2872,

13   2874(a), and 2876 ("ADAD Statute").  Gresham Decl. ¶ 3.

14   Plaintiffs have declined to place automated telephone

15   communications for clients and have lost potential business

16   opportunities and revenue as a result.  Id. ¶ 4.  Without the

17   ban, Plaintiffs would make calls such as automated surveys and

18   messages related to political campaigns, automated scripted calls

19   on behalf of political clients, and telephone town hall calls

20   that allow the answerer to join a live, town hall style forum

21   conducted with a politician or officeholder.    Id. ¶ 3.

22         Defendants admit that they, as Commissioners of the

23   California Public Utilities Commission, have the authority to

24   enforce California's ADAD Statute when there is no express or

25   implied consent to the call.  Ans. ¶ 3.  Under the statute, they

26   may enforce penalties against violators, including a fine not to

27   exceed five hundred dollars for each violation and/or

28   disconnection of telephone service to the automatic dialing-

1    announcing device for a period of time specified by the

2    commission.   Cal. Pub. Util. Code § 2876.

3        Plaintiffs filed their complaint at the beginning of August

4    2016.   ECF No. 1.   The complaint contains two causes of action

5    under 42 U.S.C. § 1983.   The first cause of action alleges that

6    Cal. Pub. Util. Code §§ 2872 and 2874 violate Plaintiffs' free

7    speech rights guaranteed by the First and Fourteenth Amendments

8    both on their face and as applied.   Compl. ¶ 22.   The second

9    cause of action alleges that those sections impose impermissible

10   prior restraints on constitutionally-protected speech and that

11   they are unconstitutional for failing to contain adequate

12   standards or guidelines to control the discretion of the

13   decision-maker.   Compl. ¶¶ 35, 36.

14       Plaintiffs filed their Motion for Preliminary Injunction and

15   Request for Advance Hearing on the Motion on August 17, 2016.

16   ECF Nos. 7, 9.   Defendants timely filed their opposition and the

17   Court denied Plaintiffs' request to advance the hearing.   ECF

18   Nos. 17, 18.   The Court heard arguments on October 4, 2016, and

19   took this motion under submission with an order to follow.

20                        II.   OPINION

21       A.   Legal Standard

22       A preliminary injunction is "an extraordinary remedy that

23   may only be awarded upon a clear showing that the plaintiff is

24   entitled to such relief."   Winter v. Natural Res. Def. Council,

25   Inc., 555 U.S. 7, 22 (2008).   To obtain a preliminary injunction,

26   a plaintiff must demonstrate that: (1) she is likely to succeed

27   on the merits, (2) she is likely to suffer irreparable harm in

28   the absence of preliminary relief, (3) the balance of equities

1   tips in her favor, and (4) an injunction is in the public

2   interest.  Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1020

3   (9th Cir. 2016) (quoting Winter, 555 U.S. at 20).  The last two

4   factors merge when the government is a party.  Drakes Bay Oyster

5   Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2013).  In the Ninth

6   Circuit, a preliminary injunction may be appropriate "when a

7   plaintiff demonstrates that serious questions going to the merits

8   were raised and the balance of hardships tips sharply in the

9   plaintiff's favor," as long as the other two Winter factors are

10  also satisfied.  Alliance for the Wild Rockies v. Cottrell, 632

11  F.3d 1127, 1131-35 (2011).

12      A preliminary injunction can be prohibitory or mandatory.

13  See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571

14  F.3d 873, 878 (9th Cir. 2009).  "A prohibitory injunction

15  prohibits a party from taking action and 'preserves the status

16  quo pending a determination of the action on the merits.'"  Id.

17  (quoting Chalk v. U.S. Dist. Court, 840 F.2d 701, 704 (9th Cir.

18  1988)).  The "status quo" is "the last, uncontested status which

19  preceded the pending controversy."  Id. (quoting Regents of the

20  Univ. of Cal. v. Am. Broad. Cos., 747 F.2d 511, 514 (9th Cir.

21  1984)).  A mandatory injunction, on the other hand, "orders a

22  responsible party to take action."  Id. (quoting Meghrig v. KFC

23  W., Inc., 516 U.S. 479, 484 (1996)) (internal quotation marks

24  omitted).  Mandatory injunctions are particularly disfavored and

25  generally "are not granted unless extreme or various serious

26  damage will result[;] they are not issued in doubtful cases or

27  where the injury complained of is capable of compensation in

28  damages."  Id. (quoting Anderson v. United States, 612 F.2d 1112,

1    1115 (9th Cir. 1980)).

2        Plaintiffs seek to change the status quo and thus seek a

3    disfavored, mandatory injunction.  As the Ninth Circuit explained

4    in Doe v. Harris, this standard can be difficult to apply in the

5    First Amendment context:

6        [A]pplication of this standard in First Amendment cases
         involves an inherent tension: the moving party bears
7        the burden of showing likely success on the merits—a
         high burden if the injunction changes the status quo
8        before trial—and yet within that merits determination
         the government bears the burden of justifying its
9        speech-restrictive law.  Accordingly, in the First
         Amendment context, the moving party bears the initial
10       burden of making a colorable claim that its First
         Amendment rights have been infringed, or are threatened
11       with infringement, at which point the burden shifts to
         the government to justify the restriction.

12

13   772 F.3d 563, 570 (9th Cir. 2014) (quoting Thalheimer v. City of

14   San Diego, 645 F.3d 1109, 1115–16 (9th Cir. 2011) (internal

15   quotation marks and citations omitted).

16       B.   Analysis

17            1.   Likelihood Of Success On The Merits

18       The merits of Plaintiffs' case depend on whether the Ninth

19   Circuit's decision upholding the constitutionality of the ADAD

20   Statute, Bland v. Fessler, 88 F.3d 729 (1996), was overruled by

21   the Supreme Court's more recent decisions regarding First

22   Amendment analysis in Reed v. Town of Gilbert, Ariz., 135 S.Ct.

23   2218 (2015), and Citizens United v. Fed. Election Comm'n, 558

24   U.S. 310 (2010).[1]  The Bland holding binds this Court unless that

25   ─────────────────

26   [1] At the hearing, Plaintiffs raised the possibility that portions
     of the statute may be unconstitutionally vague.  Plaintiffs did
27   not make a void for vagueness argument in either their Motion or
     Reply and thus the Court will not address it at the preliminary
28   injunction stage.

1    decision is clearly irreconcilable with intervening Supreme Court

2    precedent.  See Biggs v. Sec'y of Cal. Dep't of Corr. & Rehab.,

3    717 F.3d 678, 689 (9th Cir. 2013).  If the Reed or Citizens

4    United decision effectively overruled Bland, this Court will need

5    to reevaluate the statute in light of the more recent precedent.

6                    a.   Statute At Issue

7        Any person operating an automatic dialing announcing device

8    in California is subject to the ADAD Statute.  Cal. Pub. Util.

9    Code § 2872 (b).[2]  An "automatic dialing-announcing device" is

10   "any automatic equipment which incorporates a storage capability

11   of telephone numbers to be called or a random or sequential

12   number generator capable of producing numbers to be called and

13   the capability, working alone or in conjunction with other

14   equipment, to disseminate a prerecorded message to the telephone

15   number called."  § 2871.

16       The ADAD Statute's general provision proscribes use of ADADs

17   to place calls over telephone lines unless "pursuant to a prior

18   agreement between the persons involved, whereby the person called

19   has agreed that he or she consents to receive such calls from the

20   person calling, or as specified in Section 2874."  § 2873.

21   Section 2874 requires ADAD calls to be preceded by unrecorded,

22   natural voice that provides certain information and requests

23   consent from the caller to play the prerecorded message.  § 2874.

24   The ADAD must disconnect from the line upon termination of the

25   call.  Id.

26       Section 2872 lists a number of exemptions to the article's

27   ───────────────────────

28   [2] All further section citations are to the California Public
     Utility Code unless otherwise noted.

prohibitions, which are the subject of Plaintiffs' complaint.

(d) This article does not prohibit the use of an automatic dialing-announcing device by any person exclusively on behalf of any of the following:

(1) A school for purposes of contacting parents or guardians of pupils regarding attendance.

(2) An exempt organization under the Bank and Corporation Tax Law (Part 11 (commencing with Section 23001) of Division 2 of the Revenue and Taxation Code) for purposes of contacting its members.

(3) A privately owned or publicly owned cable television system for purposes of contacting customers or subscribers regarding the previously arranged installation of facilities on the premises of the customer or subscriber.

(4) A privately owned or publicly owned public utility for purposes of contacting customers or subscribers regarding the previously arranged installation of facilities on the premises of the customer or subscriber or for purposes of contacting employees for emergency actions or repairs required for public safety or to restore services.

(5) A petroleum refinery, chemical processing plant, or nuclear powerplant for purposes of advising residents, public service agencies, and the news media in its vicinity of an actual or potential life-threatening emergency.

(e) This article does not prohibit law enforcement agencies, fire protection agencies, public health agencies, public environmental health agencies, city or county emergency services planning agencies, or any private for-profit agency operating under contract with, and at the direction of, one or more of these agencies, from placing calls through automatic dialing-announcing devices, if those devices are used for any of the following purposes:

(1) Providing public service information relating to public safety.

(2) Providing information concerning police or fire emergencies.

(3) Providing warnings of impending or threatened emergencies.

7

1    These calls shall not be subject to Section 2874.

2    (f) This article does not apply to any automatic
     dialing-announcing device that is not used to randomly
3    or sequentially dial telephone numbers but that is used
     solely to transmit a message to an established business
4    associate, customer, or other person having an
     established relationship with the person using the
5    automatic dialing-announcing device to transmit the
     message, or to any call generated at the request of the
6    recipient.

7              b.    Standard Of Review For Speech Regulation

8         The ADAD Statute's constitutionality depends on whether the

9    statute is content-based or content neutral.

10        Under the First Amendment, "the government has no power to

11   restrict expression because of its message, its ideas, its

12   subject matter, or its content." Police Dep't of City of Chi. v.

13   Mosley, 408 U.S. 92, 95 (1972). "Content-based laws—those that

14   target speech based on its communicative content—are

15   presumptively unconstitutional and may be justified only if the

16   government proves that they are narrowly tailored to serve

17   compelling state interests." Reed, 135 S.Ct. at 2226. When a

18   distinction is drawn based on the message a speaker conveys, the

19   distinction is subject to strict scrutiny. Id. at 2227.

20   Content-based regulations that burden speech are treated the same

21   way as content-based bans on speech and are thus subject to

22   strict scrutiny as well. Sorrell v. IMS Health Inc., 564 U.S.

23   552, 555-56 (2011) (quoting United States v. Playboy Entm't Grp.,

24   Inc., 529 U.S. 803, 812 (2000)). Strict scrutiny "requires the

25   Government to prove that the restriction furthers a compelling

26   interest and is narrowly tailored to achieve that interest."

27   Reed, 135 S.Ct. at 2231. "[I]t is the rare case in which a

28   speech restriction withstands strict scrutiny." Reed, 135 S.Ct.

1  at 2236 (Kagan, J., concurring in the judgment) (citing Williams-
2  Yulee v. Fla. Bar, 135 S.Ct. 1656, 1666 (2015)).

3      In contrast, a reasonable time, place or manner restriction
4  on speech may be valid under the First Amendment.  Clark v. Cmty
5  for Creative Non-Violence, 468 U.S. 288, 293 (1984).  Such
6  regulations will be upheld "provided they are justified without
7  reference to the content of the regulated speech, that they are
8  narrowly tailored to serve a significant governmental interest,
9  and that they leave open ample alternative channels for
10  communication of the information."  Id.; Moser v. FCC, 46 F.3d
11  970, 973 (1995).

12      The Ninth Circuit has held that the ADAD Statute is a
13  content neutral, reasonable time, place, and manner regulation.
14  Bland, 88 F.3d at 732-36, 739.  That holding binds this Court
15  unless intervening precedent dictates otherwise.

16                c.   The Law-of-the-Circuit Rule
17      Under this circuit's law-of-the-circuit rule, courts are
18  bound by a prior circuit decision unless that decision is
19  "clearly irreconcilable with intervening Supreme Court
20  precedent."  Biggs v. Sec'y of Cal. Dep't of Corr. & Rehab., 717
21  F.3d 678, 689 (9th Cir. 2013) (citing Miller v. Gammie, 335 F.3d
22  889, 899-900 (9th Cir. 2003)).  "Circuit precedent . . . can be
23  effectively overruled by subsequent Supreme Court decisions that
24  are 'closely on point' even though those decisions do not
25  expressly overrule the prior circuit precedent."  Miller, 335
26  F.3d at 899 (citing Galbraith v. Cnty of Santa Clara, 307 F.3d
27  1119 (9th Cir. 2002)).  The issues need not be identical;
28  "[r]ather, the relevant court of last resort must have undercut

the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." Id. at 900.  In such circumstances, the three-judge panel or district court "should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled," at least "to the extent [the prior opinion] is inconsistent with the [later authority.]"  Id. at 893.

"This is a high standard." Lair v. Bullock, 697 F.3d 1200, 1207 (9th Cir. 2012).

> Although [the court] should consider the intervening authority's reasoning and analysis, as long as [it] can apply our prior circuit precedent without running afoul of the intervening authority, [it] must do so.  It is not enough for there to be some tension between the intervening higher authority and prior circuit precedent or for the intervening higher authority to cast doubt on the prior circuit precedent.

Id. at 1207 (internal citations and quotation marks omitted). Thus, this Court must follow Bland unless Bland is clearly irreconcilable with intervening Supreme Court precedent.

### d.    Ninth Circuit Precedent: Bland v. Fessler

In Bland, the Ninth Circuit subjected the California ADAD Statute to intermediate scrutiny and held that it does not violate the First Amendment.  First, the court analyzed whether the statute is content-based or content neutral.  It divided the statute into its central prohibitory provision (§ 2873) and its exemptions (§ 2872(d)-(f)).  It concluded that the central provision prescribes a *method* of communication, not the content of communication.  Bland, 88 F.3d at 733 (emphasis in original).

Next, the court concluded that the exemptions in the statute

are also content neutral.  It found that the global exemption for
parties with an existing relationship, § 2872 (f), and the
exemption for nonprofit organizations calling their members,
§ 2872(d)(2), rest "not on the content of the message, but on
existing relationships implying consent to the receipt of ADAD
calls."  Id. (noting the Eighth Circuit's similar analysis of
Minnesota's ADAD statute in Van Bergen v. Minn., 59 F.3d 1541
(8th Cir. 1995)).  The court reached the same conclusion for the
other exemptions, but noted that the others "do relate to
content, some involving existing relationships, others not."
Bland, 88 F.3d at 733-34.  The Bland court stated:

> Although regulating content, all of these exemptions
> are based on relationships implying consent to receive
> ADAD calls, or messages the recipient wants to hear, or
> both: parents want to know of their children's
> attendance, consumers of cable and utility services
> want installation information, and everyone wants
> information concerning public safety and emergencies.

Id., at 734.  The court rejected the plaintiffs' argument that
the exemptions privilege some relationships over others, noting
that the statute exempts communications between *all* persons and
entities with *established relationships*. Id. (emphasis added).

Finally, the court rejected plaintiffs' argument that "the
group-based exemptions improperly contain content-based
restrictions," as there was no indication that the government
adopted the regulation because of disagreement with the message
conveyed.  Id. (Citing Ward v. Rock Against Racism, 491 U.S. 781,
791 (1989)) It observed:

> Not a scintilla of evidence suggests that the State of
> California disapproves of parent-teacher communication
> regarding student grades, as opposed to the
> communication about student attendance that the statute
> permits. Nor do the restrictions on the content of the

11

messages the other exempted groups may convey—cable companies may call only regarding previously arranged service installation, and dangerous facilities may call only regarding disasters—carry the scent of government favoritism in the free market of ideas.

Id.  The court determined that the exemptions, and thus the statute, were content neutral and went on to apply intermediate scrutiny.

> e.   Intervening Precedent: Reed v. Town of Gilbert, Ariz.

In 2015, the Supreme Court held that a sign ordinance exempting and regulating signs of certain categories—imposing different restrictions on temporary directional signs as compared to political and ideological signs—was a content-based regulation of speech that could not survive strict scrutiny.  Reed v. Town of Gilbert, Ariz., 135 S.Ct. 2218 (2015).  In doing so, the Court reversed the Ninth Circuit's holding that the town's Sign Code was content neutral.  Id. at 2226.  The Court primarily took issue with the Ninth Circuits' reasoning that the Sign Code was content neutral because the town "did not adopt its regulation of speech based on disagreement with the message conveyed and its justifications for regulating temporary directional signs were unrelated to the content of the sign."  Id. at 2227 (paraphrasing the appellate court).  Justice Thomas wrote:

> But this analysis skips the crucial first step in the content-neutrality analysis: determining whether the law is content neutral on its face.  A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech. . . . Although a content-based purpose may be sufficient in certain circumstances to show that a regulation is content based, it is not necessary.  In other words, an innocuous justification cannot transform a facially

1    content-based law into one that is content neutral.

2        That is why we have repeatedly considered whether a law
3        is content neutral on its face before turning to the
         law's justification or purpose.

4    Id. at 2228.  Correcting the Ninth Circuit's reliance on Ward,

5    Justice Thomas explained that "Ward's framework applies only if a

6    statute is content neutral."  Id. at 2229.

7        The Court next rejected the Ninth Circuit's reasoning that

8    "the Sign Code was content neutral because it does not mention

9    any idea or viewpoint, let alone single one out for differential

10   treatment."  Justice Thomas clarified that "[t]he First

11   Amendment's hostility to content-based regulation extends . . .

12   to prohibition of public discussion of an entire topic."  Id. at

13   2230.  "A speech regulation targeted at specific subject matter

14   is content based even if it does not discriminate among

15   viewpoints within that subject matter."  Id.

16       Finally, the Reed Court rejected the Ninth Circuit's

17   characterization of the Sign Code's distinctions as content

18   neutral because they are speaker and event-based.  According to

19   the Court, the distinctions were not speaker-based, and even if

20   they were, that would not necessarily make the distinctions

21   content neutral: laws favoring some speakers over others demand

22   strict scrutiny when the legislature's speaker preference

23   reflects a content preference.  Id. at 2230 (citing Citizens

24   United, 558 U.S. at 340, and Turner Broad. Sys., Inc. v. FCC, 512

25   U.S. 622, 658 (1994)).

26       Concluding that the Sign Code imposed content-based

27   restrictions on speech, the Court subjected the code to strict

28   scrutiny and found that the town could not show that the

1    ordinance was narrowly tailored to further a compelling

2    government interest.  Id. at 2232.  In closing, Justice Thomas

3    opined that "a sign ordinance narrowly tailored to the challenges

4    of protecting the safety of pedestrians, drivers, and passengers—

5    such as warning signs marking hazards on private property, signs

6    directing traffic, or street numbers associated with private

7    houses—well might survive strict scrutiny."  Id. at 2233.

8                    f.   Bland Is Not Clearly Irreconcilable With
                          Reed
9

10        As Plaintiffs argue, and the Ninth Circuit has recognized,

11   Reed "provided authoritative direction for differentiating

12   between content neutral and content-based enactments.  United

13   States v. Swisher, 811 F.3d 299, 313 (9th Cir. 2016).  Reed's

14   holding, however, is not so clearly irreconcilable with Bland to

15   excuse this Court from following Bland's binding authority.

16        Reed's prescription that courts apply strict scrutiny to

17   facially content-based statutes regardless of governmental motive

18   is in tension with some of the Ninth Circuit's language in Bland.

19   The Bland court noted that certain exemptions to the ADAD Statute

20   are "related to content" and cited "Ward's framework" to reject

21   the plaintiffs' argument "that the group-based exemptions

22   improperly contain content-based restrictions."  Bland, 88 F.3d

23   at 734.  A few of the exemptions do relate to content: schools

24   may call parents and guardians regarding student attendance;

25   certain companies may call customers about previously arranged

26   services; certain agencies may contact the public regarding

27   public safety and emergencies.

28        But, "some tension" is not enough to make the decisions

                                   14

clearly irreconcilable. See Lair, 697 F.3d at 1207.   The Bland
court found that all of the ADAD Statute exemptions were based
"on existing relationships implying consent to the receipt of
ADAD calls" or messages—like public safety and emergency
information—the recipient wants to hear.   Bland, 88 F.3d at 733-
34.   In fact, each and every exemption involves an existing
relationship except for the exemptions for emergencies and public
safety, which Plaintiffs say they do not contest the government's
interest in making.   Although the exemption for schools regarding
attendance and certain entities regarding prearranged services
relate to content, these callers have an established relationship
with the call recipients that would otherwise exempt direct calls
to those recipients under § 2872(f).   Subsection (d) merely
extends that relationship-based exemption to intermediaries
working solely on behalf of those callers to convey information
the recipient already expects to receive.   § 2872(d)(1),(3), &
(4).   This Court would be reading too far beyond the holding in
Reed to find that the decision reaches relationship-based,
consent-based, or emergency-based distinctions.

In addition to the analytical distinctions between Reed and
Bland, the factual distinctions caution against finding circuit
precedent overruled.[3]   The Sign Code in Reed exempted certain
signs from a general prohibition and imposed different

---

[3] Defendants further distinguish the cases on the fact that the
Sign Code regulated outdoor signs while the ADAD Statute
regulates intrusions into the private home.   Although courts have
recognized that residential privacy is an important or
significant government interests, Defendants do not point the
Court to any case where a private channel of communication
triggered a lower standard of scrutiny.

1   restrictions on "Ideological Signs," "Political Signs," and

2   "Temporary Directional Signs Relating to a Qualifying Event."

3   Reed, 135 S.Ct. at 2224-25.   In contrast, the ADAD Statute

4   requires consent for all ADAD calls and makes exemptions to the

5   express consent requirement only for those with existing

6   relationships that imply consent and for emergencies.   The

7   statute does not single out political subject matter or other

8   subject matter for differential treatment.   A call from a

9   nonprofit to a member or from a business to an established

10  customer may contain a political message, a commercial message,

11  or a message on another subject matter, and that message will not

12  determine whether the caller violated the statute; the

13  relationship between the parties will.   In support of their

14  position, Plaintiffs direct the Court to a post-Reed, Fourth

15  Circuit decision striking down a South Carolina ADAD Statute for

16  its content-based restrictions; however, that statute, like the

17  Sign Code in Reed, singled out "calls with a consumer or

18  political message but [did] not reach calls made for any other

19  purpose."  Cahaly v. Larosa, 796 F.3d 399, 405 (4th Cir. 2015).

20  More significant to this Court are two post-Reed district court

21  decisions that each upheld a state ADAD statute that also exempts

22  certain ADAD calls placed to recipients with a preexisting

23  relationship with the caller.   See Gresham v. Swanson, No. 16-

24  1420, 2016 WL 4027767 (D. Minn. July 27, 2016); Patriotic

25  Veterans, Inc. v. Ind., No. 10-723, 2016 WL 1382137 (S.D. Ind.

26  Apr. 7, 2016).   Neither of those courts read Reed to require

27  strict scrutiny for relationship-based distinctions.

28          Furthermore, Plaintiffs' principal issue with the ADAD

16

1    Statute is that it exempts nonprofits for calls to their members
2    but does not exempt Plaintiffs' activity.  See § 2872(d)(2).  But
3    the Bland court, without considering governmental motives, easily
4    determined that the exemption for nonprofits was content neutral
5    and that the exemption "rests on existing relationships implying
6    consent."  Bland, 88 F.3d at 733.  The critical point is that
7    nonprofits are only exempt from the prohibition when making calls
8    to their members; the Legislature did not write them a blank
9    check.  Of the exemptions that may be in tension with Reed, this
10   is not one of them.

11        For all of these reasons, this Court finds that the Ninth
12   Circuit's holding in Bland is not clearly irreconcilable with
13   Reed and that decision cannot justify departure from this
14   circuit's precedent.

15             g.   Bland Is Not Clearly Irreconcilable With
                    Citizens United
16

17        Plaintiffs also argue that the ADAD statute discriminates on
18   the basis of the speaker's identity in violation of the First
19   Amendment.  Rep. at 3; Mot. at 10.  At the hearing, Plaintiffs
20   argued that the exemptions are speaker-based distinctions that
21   are impermissible under Reed and Citizens United.

22        However, neither decision meets the law-of-the-circuit
23   rule's high threshold to overcome Bland.  The Reed court
24   determined that the Sign Code at issue was not speaker-based, and
25   the dicta accompanying that conclusion do not provide this Court
26   with a clear rule for determining when a speaker-based statute
27   would trigger strict scrutiny.  Reed, 135 S.Ct. at 2230-31.  The
28   Reed court merely points out that a speaker-based distinction is

1   not necessarily content neutral; rather, the distinction

2   "begin[s] [] the inquiry."  Reed, 135 S.Ct. at 2230–31.

3       Citizens United speaks more to Plaintiffs' point, but is not

4   irreconcilable with Bland.  In the majority opinion, the Supreme

5   Court stated that "speech restrictions based on the identity of

6   the speaker are too often simply a means to control content.

7   . . . [T]he Government may commit a constitutional wrong when by

8   law it identifies certain preferred speakers."  Citizens United

9   v. Fed. Election Comm'n, 558 U.S. 310, 340 (2010).  The law at

10  issue in Citizens United was both content-based—specifically

11  applying to electioneering and speech advocating for or against

12  political candidates—and speaker-based—singling out corporations

13  and unions.  Id. at 310.  The Court held that the government

14  cannot suppress political speech on the basis of the speaker's

15  corporate identity.  Id. at 365.

16      The Citizens United decision does not say, or even strongly

17  imply, that a distinction based on relationship or consent is

18  subject to strict scrutiny.  Certainly, relationship-based

19  statutes will requires some inquiry into a speaker's identity,

20  but only in order to determine the existence of a relationship

21  between the speaker and the listener.  The statute does not make

22  blanket exemptions for certain speakers.  For instance, a

23  nonprofit would be exempted under § 2872(d)(2) when calling

24  members, but not if it canvassed all phone numbers in a certain

25  geographic region.

26      Furthermore, even if the statute were speaker-based, the

27  Ninth Circuit has not interpreted Citizens United to hold that

28  speaker-based laws automatically trigger strict scrutiny.  Doe v.

18

1    <u>Harris</u>, 772 F.3d 563, 575–76 (9th Cir. 2014) (analyzing a statute

2    that singles out registered sex offenders under intermediate

3    scrutiny after distinguishing the case from Citizens United).

4    <u>Bland</u> is not clearly irreconcilable with <u>Citizens United</u> and thus

5    <u>Bland</u> remains binding on this Court.

6         Under controlling Ninth Circuit precedent, the California

7    ADAD Statute does not violate the First Amendment and Plaintiffs

8    are thus not likely to succeed on the merits of their claim.

9              2.   <u>The Remaining Factors</u>

10        As described above, courts consider the four factors

11   outlined in <u>Winter</u> to determine whether a preliminary injunction

12   should issue.  However, in the First Amendment context, the

13   irreparable harm, balance of the equities, and public interest

14   analysis are heavily informed by the merits determination.  <u>Bland</u>

15   binds this Court and Plaintiffs are unlikely to succeed on the

16   merits.  The Court thus finds against Plaintiffs on the remaining

17   factors as well.

18

19                   III.   ORDER

20        Plaintiffs' Motion for Preliminary Injunction is DENIED.

21

22        IT IS SO ORDERED.

23        Dated: October 6, 2016

24                                   _____

25                                   JOHN A. MENDEZ,
                                     UNITED STATES DISTRICT JUDGE

26

27

28
                                    19